| | |
|---|---|
| SALVADOR JIMENEZ, | No. 2:17-cv-2093 MCE GGH (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS |
| v. | |
| STEWART SHERMAN, | |
| Respondent. | |

Petitioner appearing pro se and in forma pauperis filed his petition for writ of habeas corpus on October 10, 2017. ECF No. 1. On December 18, 2017 Respondent filed a Motion to Dismiss the petition on the ground that it is barred by statute of limitations.

*THE PETITION*

Petitioner, a two strikes defendant was tried for who was convicted of three count of robbery and sentenced to one hundred years to life. Id. at 1. His appeal to the Third District Court of Appeal was denied on September 23, 2015, in an unpublished opinion, id. at 2, and his Supreme Court appeal was summarily denied on December 9, 2015. Id. at 3. He sought certiorari in the United States Supreme Court which was denied October 3, 2016. Id. The instant petition seeks relief on the grounds that there was insufficient substantial evidence to convict, id. at 5, prejudicial error in allowing evidence of petitioner's homeless status and drug use, id. at 7, prejudicial error in denying mistrial when a prosecution witness expressed an impermissible

1

opinion in the jury's presence as he departed the witness stand, id. at 8, and use of an outdated eyewitness evaluation instruction, Cal. Crim. 315, id. at 10.[1]

Subsequent to the filing of the Motion to Dismiss, and the opposition thereto, petitioner sought leave to file an amended brief, i.e., he sought to raise an actual innocence claim which, if sufficiently colorable, would not be barred by the AEDPA limitations statute. That issue is addressed separately from this Findings and Recommendations.

*MOTION TO DISMISS*

As a threshold matter, respondent points out that petitioner did not file any post-conviction collateral challenges to his conviction and sentencing. ECF No. 10 at 2:4-5. Respondent calculated the limitation for filing a petition to be October 3, 2017, one year after the petition for writ of certiorari was denied by the United States Supreme Court on October 3, 2016, thus bringing direct review to a conclusion. Id. at 2:3. See Clay v. United States, 537 U.S. 522 529 n.4 (2003). Each of these factual representations is supported by official documents of the courts in question submitted by respondent to which judicial notice is ascribed under Federal Rule of Evidence 201(b)(2).[2] Petitioner does not dispute the accuracy of the conclusions stated above. Thus pursuant to 28 U.S.C. section 2244(d)(1)(A) the statute of limitations ran on petitioner's time to seek habeas relief in this court on October 3, 2017. Petitioner does not dispute this fact either.

Based on the foregoing facts, respondent moved to dismiss the petition on the ground it is barred by the statute of limitations insofar as the petition was filed, by virtue of the mailbox rule, **two days** after the statute had run. Id. at 3:6-10. Respondent does, however, recognize that the statute must be tolled under certain circumstances. Id. at 2:24. Statutory tolling has no applicability here.

*PETITIONER'S OPPOSITION*

In his Opposition petitioner seeks to take advantage of the equitable tolling recognized by

---

[1] The respondent's Motion to Dismiss does not challenge petitioner's timeline, but rather affirms it. ECF No. 10 at 1-2.
[2] See Lodged Documents 1-4 and 8.

2

the federal courts on the ground that events beyond his control, which were the product of lower a combination of his appellate attorney's failure to provide him with the files compiled during the litigation of his criminal charges and the failure of defense counsel and the state courts to assist him in gaining access to those files, combined with the failure of the California Department of Corrections ["CDC"] to act timely on his request for certification of his trust account balance for the six month period preceding his filing of the petition, thereby to support intended request for in forma pauperis status in this federal habeas action.

A.    <u>Failure to Acquire Criminal Case Files</u>

Petitioner argues in his opposition to the Motion to Dismiss that when he learned that the Yolo County Assistant Public Defender assigned to handle his appeals, Allison Zuvella, had taken no steps to institute collateral actions seeking to overturn his conviction once his Petition for Certiorari to the United States Supreme Court had been denied, he made repeated efforts to contact Ms. Zuvella, both through telephone calls and letters to request his case files so he could undertake the task himself and bring habeas petitions in the State courts. ECF No. 17 at 1:1-6. These requests were ignored. Petitioner thereafter filed a Motion in the Yolo Superior Court to extend his time to file a pro se habeas petition and to direct the Yolo County Public Defender to release his case files to him which was denied in an Order entered April 3, 2017. <u>Id.</u> at 8.[3] Petitioner filed an appeal from this denial with the Yolo Superior Court Appellate Division which was denied on June 6, 2017. <u>Id.</u> at 11. Next petitioner then filed a Petition for a Writ of Mandate with the Third District Court of Appeal which he signed on July 5, 2017, <u>id.</u> at 12-17,[4] for a Writ of Mandate directing the Yolo County Superior Court to compel release of his case files and grant him a 60 day extension of time to file a habeas petition which was denied in an undated statement by the court without prejudice to filing a renewed motion in the superior court. <u>Id.</u> at 18. This

---

[3] The court, without a request from petitioner, accords this and subsequent court orders submitted by petitioner judicial notice under Federal Evidence Code section 201(c)(1),insofar as their sufficiency can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. F.R.Evid. 201(b)(2).

[4] This document does not reflect the filing with the Appellate Court and cannot be accorded judicial notice and thus is not referred to for the truth of its filing, but it fits in the timeline being laid out here when viewed next to the denial of the Writ.

document is accompanied by a mailing list reflecting it was sent to petitioner, the Office of the State Attorney General, and the Yolo County Superior Court. Id. at 19. Petitioner made a final attempt to get relief from the California Supreme Court; the Administrator of which responded in a letter indicating that petitioner's "letter" of September 4, 2017 seemed to seek legal advice the court could not provide and he might consider consulting an attorney. Id. at 23. At this point petitioner apparently proceeded to draft the habeas petition ultimately filed in this court and appears to have completed it timely.

Had petitioner filed the petition when it was completed, i.e., filed it by giving it to prison authorities for mailing, he would have avoided any statute of limitations concern. This brings us to the second basis for his Opposition to the pending motion to dismiss.

B.  Interference by Prison Officials

Petitioner sought in forma pauperis status simultaneously with his filing of the petition. ECF No. 2. In his application he discusses his difficulty in obtaining both his case file and a certified record of his trust account history as follows:

> Under penalty of perjury I declare that I am indigent and have shown more than my due diligence in my attempts to obtain my entire file from Allison Zuvela at the Yoo County Public Defenders [sic] office. I am, at best, a layman and attempting to navigate this federal writ of habeas corpus on a proper status. (Soloman v U.S. 467 F.3d 928, 933-34 (6th Cir. 2006).[5] Enclosed in the original Order Form 22 sent out 9-26-17. I do not have the [$.10] needed to process my trust account history. I can send it in mid October, when the trust account office passes them out. My trust account is "0" and I cannot afford to pay for a history account  If I can correct any errors please give me the opportunity t do so. My trust balance has been at "0' for over 6 months.

Id. at 3.

As to the claimed state court interference with his progress on his petition, the document referred to above, to which the court gives judicial notice, supports his statements. Id. at 4; ECF No. 17 at 27. The form reflects that petitioner sought his account certification on September 26, 2017 using the proper Department form. That request was not responded to until October 2, 2017

---

[5] Solomon focuses on the issue of whether petitioner "sat on his rights" thereby removing the potential for equitable tolling and determines that he did not do so under the circumstances disclosed in the pleadings.

4

at which time it was denied and returned to petitioner and petitioner mailed his petition for filing on the same day. Id. at 22-24. Petitioner attaches as an Exhibit to his Memorandum a copy of his request form with the response from the CDC Trust Office which states: "Your current available balance is 0. Quarterly statements will be sent to the yards mid October. If you would like additional statement you must submit a CDC193 for $.10 and you must have funds available to process. Id. at 4." The stamp on the document reflects that it was received in the Trust Office on October 2, 2017, and the document further reflects that the response was mailed to petitioner on October 3, 2017, the very date his petition was due if he were to avoid the statute of limitations. Id. Petitioner states in his opposition that he received the response from the trust office on October 5, 2017. Id. at 26:6-8. The total time expended by the trust fund snafu approximated ten days.

Based upon the agreement of the parties discussed above at 2:14-17, it is accepted by the court that the petition was due to be filed on October 3, 2017 and it was filed based on the mailbox rule on October 5, 2017 – the very day upon which he received the notice that his account statement would not be provided. The question remaining is whether these agreed facts support a grant of equitable tolling that will allow this petition to go forward on the merits.

*EQUITABLE TOLLING STANDARDS*

In Holland v. Florida, 560 U.S. 631 (2010), the Supreme Court considered whether a petition filed approximately five weeks after the statute of limitations ran could be considered on its merits based on equitable tolling. Id. at 635. Factually, the Holland factual circumstances are somewhat similar to those found here. In Holland the petitioner repeatedly inquired of his appellate attorney regarding the status of his appeals but received no answer. Id. at 639. While working in the prison library several days later petitioner learned that the Florida Supreme Court had issued its final determination on his case and issued its mandate five weeks earlier and he immediately drafted his pro se petition and mailed it to the District Court the next day. Id at 639-640. The Court went on to state that it had "previously made clear that a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of allowing equitable tolling (if otherwise appropriate), id. at 645-646 *citing* Irwin v. Department of Veterans

Affairs, 498 U.S. 89 (1990)(applying equitable tolling to suits against the United States) , Young v. United States 535 U.S. 43, 49 (2002)(hornbook law makes clear that limitations periods are "customarily subject to 'equitable tolling'").  The Holland court went on to finds that in order to benefit from equitable tolling, the *petitioner* had the burden of showing that he had been pursuing his review rights with diligence, and that extraordinary circumstances stood in his way of a timely filing.

In Holland the district court had denied tolling not on the lack of extraordinary circumstances, but instead on petitioner's lack of diligence.  Id, at 653.  In reversing that finding the Court held that "[t]he diligence required for equitable tolling purposes is "reasonable diligence,'" not "maximum feasible diligence," id. (internal citations omitted).[6]

The threshold showing for equitable tolling by petitioner is set "very high, lest the exceptions swallow the rule."  Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.) (2009).  Thus petitioner must both prove his entitlement  by proving that the alleged "extraordinary circumstances" he asserts prevented him from timely filing were the cause of that untimeliness, not his own lack of diligence,  Roy v. Lampert, 465 F.3d 964, 969 (9th Cir. 2006) (2007), or his "oversight, miscalculation or negligence."  Waldron –Ramsey, at 1011.

In the Reply Memorandum Respondent focuses on each factor of petitioner's performance to argue that he has neither been sufficiently diligent nor are his grounds for his claims sufficiently specific.[7] `

////

////

---

[6] Holland remanded the equitable tolling issue to the Court of Appeals, which then remanded to the district court.  The published record appears to be silent on any resolution to this issue; perhaps the State simply acquiesced in going forward on the merits.  Holland v. Tucker, 854 F.Supp. 2d 1229, *aff'd. in part, rvs'd. in part* Holland v. Florida, 775 F.3d 1294 (11th Cir. 2014).

[7] Respondent spends significant effort to overcome any potential for statutory tolling based on petitioner's efforts to recover his file, ECF No. 18 at 2:2-4:9.  The undersigned agrees that writs of mandamus for acquisition of trial materials do not implicate statutory tolling; however, of course, they may implicate both diligence and extraordinary circumstances necessary for equitable tolling.

*DISCUSSION*

A. Case File

    1. *Diligence*

One should not conflate the requirements of diligence and extraordinary circumstances. Holland did not set forth two criteria for equitable tolling just to have the two analyzed in one breath. Moreover, both criteria are intensely factual, and with respect to acquiring case files, there are times when the diligence inquiry cannot be performed on a sterile record. United States v. Battles, 362 F.3d 1195 (9th Cir. 2004).

Regardless of whether efforts expended to obtain one's criminal file constitute extraordinary circumstances, discussed below, diligence is simple to find on the record in this case. Petitioner undertook extensive efforts over six months to get his criminal file, even to the point of filing mandamus petitions over the course of months, which he believed necessary to formulate a federal petition. Petitions may include not just exhausted issues, but may also contain new issues for which petitioner will seek permission to exhaust while his case is stayed. Diligence does not require success; just hard work. The pleadings of pro se litigants setting forth diligence must be construed liberally. Roy v. Lampert, supra, 465 F.3d at 970). Moreover, as discussed infra, the undersigned cannot find that diligence requires substantial efforts every single day of the limitations period.

    *2. Extraordinary Circumstances*

In determining whether obtaining a case file warrants the finding of extraordinary circumstances, one must differentiate those situations where the "case files" reason is nothing more than a last, desperate grasp to overcome the limitations bar, or the reason why some type of colorable claim was not timely filed.

The Ninth Circuit has not always spoken consistently on this subject. "As we have recognized, it is 'unrealistic to expect [a habeas petitioner] to prepare and file a meaningful petition on his own within the limitations period' without access to his legal file ( Spitsyn, 345 F.3d at 801)." Espinoza-Matthews v. California, 432 F.3d 1021, 1027-28 (9th Cir. 2005).

////

Earlier, in <u>United States v. Battles</u>, supra, 362 F.3d at 1197-1198 (9th Cir. 2004), the Ninth Circuit had discussed the availability of equitable tolling while a petitioner attempted to get his criminal file:

> At first blush, we would think not. After all, he did eventually file his habeas corpus petition even though he did not have the transcripts, and, as the district court indicated, that suggests that the lack of transcripts did not actually make it impossible for him to file. In other words, whether his attorney was benignant or malignant, filing was not prevented.
>
> However, we have recently held to the contrary in a case whose facts are almost exactly the same as those we face here-*Ford v. Hubbard*, 330 F.3d 1086 (9th Cir.2003), cert. granted on other grounds, *Pliler v. Ford*, 124 S.Ct. 981, 157 L.Ed.2d 811, 2004 WL 42545 (U.S. Jan.9, 2004). In Ford, as here, the claim was untimely filed. *Id*. at 1105. There, as here, the attorney did not deliver "the complete set" of legal papers in a timely fashion. *Id.* There, as here, at least a portion of the file had been forwarded at an earlier time. *Id.* There, as here, there appeared to be a large hiatus between the time that the file was first sent out and the time that additional material was requested. *Id*.
>
> In *Ford*, the state pointed out that the correspondence between Ford and counsel showed a two year gap between the initial sending of the file and Ford's request for more information, with that request coming after the statute of limitations had expired. *Id*. Here the record shows an almost seven month gap, with the second request coming after the statute of limitations had expired. But, in Ford, as here, the petitioner responded to the state's pointing out of the gap "by asserting that he was unsuccessfully trying to obtain the complete record from his counsel during the [gap] period," *Id*. There, as here, that "fact" was one "that, on the record before us, [was] uncorroborated by independent evidence." *Id*.
>
> In Ford, as here, the district court did not give the petitioner an opportunity to amend before it denied the petition on statute of limitations grounds. *Id*. at 1107. Here, a motion for reconsideration was decided, but in Ford, the petitioner had an opportunity to object to the magistrate judge's report before the district court ruled, and he did so. *Id*. at 1096.
>
> After some general discussion about whether attorney wrongdoing should amount to extraordinary circumstances, we declared the following in *Ford*:
>
>> There are no cases in this circuit determining whether an attorney's failure or refusal to provide a habeas client with important parts of his legal file may rise to the level of "extraordinary circumstances" for purposes of equitable

8

> tolling. We prefer not to decide that question here, because the factual record is insufficiently developed.... [T]he district court in Ford's case did not give the petitioner an opportunity to amend his petition or expand his declaration and did not hold an evidentiary hearing. Because equitable tolling issues "are highly fact-dependent, and because the district court is in a better position to develop the facts and assess their legal significance in the first instance," we remand Ford's additional ... claims to the district court with instructions that it develop an adequate evidentiary record before again determining whether the statute of limitations should be equitably tolled as to those claims.
>
> *Id*. at 1107 (citations omitted). We see no principled distinction between this case and *Ford*,[footnote omitted] and because justice demands that we treat like cases alike, [footnote omitted] we must remand for a further development of the record on the issue of just what counsel did or did not do, and on the issue of causation.

[Ford as discussed above was reversed on grant of certiorari to the Supreme Court, Pliler v. Ford, 542 U.S. 225 (2004), and ultimately on remand, the Ninth Circuit held that petitioner never contested the factual finding by the district court that he was aware of his claims prior to receiving his case file, and therefore had waived the issue—no equitable tolling. Ford v. Pliler, 590 F.3d 782, 790 (9th Cir. 2009)].

The undersigned is somewhat torn with respect to the case file issue. It seems apparent from the exhibits attached by petitioner that even up to the time of drafting his petition, no case file had yet been obtained.[8] However, petitioner was able to file the federal petition specifically asserting the claims in a fashion which appeared copied. Surprisingly, petitioner was also able to file precise case numbers and dates of his entire state court history (including that of the trial court) which would be nearly impossible unless petitioner had an impeccable photographic memory, or was in possession of all or part of his criminal case file at the time he said he did not have it. Moreover, while no briefing was filed with the federal petition, it is difficult to believe that this same petition could not have been filed months before, briefing to come afterwards.

////

---

[8] The California Supreme Court had responded to petitioner's request on September 14, 2017, and in all probability, petitioner did not receive it until on or about September 20, 2017. The petition was probably crafted some time between September 20, and the time petitioner asked a read out of his trust fund monies on or about September 26.

9

But initial briefing can be important, and it does seem reasonable for this pro se petitioner to have desired to file something besides the bare bones petition he actually filed. In the instant case petitioner has explained his reason the need to have his file in his Opposition Memorandum where he makes clear he was looking for such facts as evidence of identification , exculpatory evidence, written recorded statements of percipient witnesses, defense counsel interview requests and notes of any interviews and other similar material. ECF No. 18 at 28:16-30:27. These are not insignificant concerns for the petitioner. It would appear that he was attempting to determine whether he had a claim for ineffective assistance of trial counsel sufficient to rise to a Constitutional basis for success in his ultimate petition.

In sum, whether petitioner would be eligible for equitable tolling on account of not having case files cannot be determined on a motion to dismiss, but must await an evidentiary hearing-- unless petitioner is eligible for a few days equitable tolling for hiccups associated with obtaining the prison trust fund statement.

B. <u>Delay in Receipt of Certified Account Information</u>

Respondent contends that petitioner failed to exercise due diligence in assuring that he understood the procedural and legal bases for acquiring in forma pauperis status pre-filing, and that failure to understand that every administrative request will take some time to complete bars extension of equitable tolling. That is, he should have sought the trust fund information long before the limitations expiration date loomed. In <u>Holmes v. Macomber</u> 2016 WL 6595359 *4 (C.D.Cal. 2016) the district court held that "[i]gnorance of IFP requirements is not an extraordinary circumstance. Procedural ignorance, like legal ignorance does not merit equitable tolling." The same court held in <u>Morales v. McEwan</u>, 2012 WL 632405 *5 (C.D.Cal. 2012) that "had [petitioner] inquired he would have learned it takes [the trust office] about a week to process applications." In <u>Ford v. Pliler</u>, 590 F.3d 782 789 (9th Cir 2009), the Ninth Circuit held that the equitable tolling standard "has never been satisfied by a petitioner's confusion or ignorance of the law alone" when examining a delay claim such as exists here. Conversely the same court held in <u>Spitsyn v. Moore</u>, 345 F.3d at 800, that the failure of prison officials to prepare a check for a filing fee or to obtain a signature from petitioner has been held to constitute extraordinary

circumstances warranting equitable tolling, citing to Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) and Stillman v. LaMarque, 319 F.3d 1199, 1202 (9th Cir. 2003)(equitable tolling available even if delay results from a combination of attorney negligence and prison officials' misconduct.)

In other words, as the foregoing makes clear, there are conflicting views on this issue regarding late provision of an inmates request for a trust account certificate to accompany his petition for the writ. The Ninth Circuit addressed this issue in its recent decision in Grant v. Swarthout, 862 F.3d 914 (9th Cir. 2017). In Swarthout the district court held that Grant was not entitled to equitable tolling because he had not shown that he was diligent overall throughout the entire 354 days prior to his filing of his state petition for post-conviction relief and that such a showing was necessary to warrant equitable tolling. The court began its analysis by noting that "At bottom, the purpose of equitable tolling is to 'soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having [her] day in court' " *quoting* Rudin v. Myles, 781 F.3d 1043, 1055 (9th Cir. 2015) (alteration in original) (citation omitted). It then posed the central question with regard to equitable tolling to be "whether equitable tolling may be denied because a court decides that the prisoner acted unreasonably by failing to work diligently on his case throughout the entire portion of the one-year statute-of-limitations period that preceded the occurrence of the "extraordinary circumstance". Id. at 919. It answered that question in the negative as follows:

> To use equitable principles to in effect shorten the already-short statutory period available to all prisoners by requiring them to anticipate extraordinary circumstances and to perform the necessary legal work in a shorter period of time than the statute requires would deprive them of the availability of the full statute-of-limitations period and would compel them to meet the additional judge-made requirement of performing their legal research and writing on a schedule deemed appropriate in hindsight by a judge.
> That is, equitable tolling entitles a prisoner who experiences an unexpected hardship to additional time when he would otherwise be denied his day in court. In applying these equitable considerations, we must bear in mind that prisoners are generally pro se and are not only without the resources to hire counsel but also most often without the knowledge or ability to prepare timely and adequate habeas petitions by themselves. Allowing courts to forfeit a petitioner's right to equitable tolling because in the court's judgment the prisoner could have filed earlier in the statute-of-limitations period had he scheduled his legal work differently would undermine the equitable principles that

underlie the use of equitable tolling in habeas cases.

Id. at 920.

This case arguably muddies the diligence and extraordinary impediments waters even more. It seems as though Grant regards every day a prisoner is somehow impeded, regardless of whether no diligence is exercised on the non-impeded days, as a day to count for equitable tolling. Similarly, Grant holds that "*any delay*", id. at 926 (emphasis added), on the part of prison officials in acceding to a prisoner's request having something to do with filing a petition is a delay to be counted for equitable tolling. Same day service may now be the response rule for prison officials. It remains to be seen whether "any delay" in the mails, or "any delay" by former counsel or the state courts in responding to a letter for a petitioner's file, or some other administrative request, is now extraordinary. The extraordinary may now be ordinary.

Nevertheless the Grant case says what it says and the undersigned is bound. As this court has found, petitioner here was prepared to file his petition several days before the statute of limitations lapsed. He was, however, confronted with an unanticipated, "extraordinary" "delay" in receiving his trust account certificate.[9] Importantly though, he continued to exercise due diligence after the delay had ended, filing his petition the very day he finally received a response from the trust office. Petitioner is entitled to at least seven days equitable tolling which makes his petition timely.

*CONCLUSION*

There is no need to hold an evidentiary hearing on the former issue of petitioner's (maybe) inability to access his criminal file, as the seven day tolling period awarded because of the delay in obtaining a trust account certificate suffices for equitable tolling.

In light of the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Respondent's Motion to Dismiss should be DENIED;

---

[9] Petitioner did not, in actuality, have to await this certificate to file his petition, even though he thought he did, as the district courts routinely take care of these administrative matters after the filing of a petition. Even in situations where IFP status is not requested, the courts routinely attempt to determine whether a pro se petitioner is really desirous of paying the filing fee and losing the remaining benefits which ensue upon a granting of IFP status.

12

2. Respondent should be directed to Answer the Petition within 20 days of the District Court's Order in this case.[10]

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 7, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

---

[10] This time frame may be altered as the court also has under submission, a request by petitioner to add a new "actual innocence" or Brady claim to the case. This action might be stayed depending on the ruling.