UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR JIMENEZ,<br><br>    Petitioner,<br><br>    v.<br><br>STEWART SHERMAN,<br><br>    Respondent. | No. 2:17-cv-02093 MCE GGH P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

*Introduction and Summary*

Petitioner, convicted of multiple store/fast food robberies (but not on all counts), insists that the evidence used to convict him, eyewitness and family identification testimony for the most part, was insufficient. He also raises errors regarding the admission of evidence and witness misconduct. A final issue involves eyewitness identification factors. For the reasons that follow, the petition should be denied.

*Factual Background*

In cases where insufficient evidence is alleged, it is important to set forth the facts as given by the California Court of Appeal as that is the rendition which must be judged against the record and AEDPA deference.

////

A

*Robbery Of Marisol Ortiz At Razz Yogurt*

*Count 7—Guilty*

On July 7, 2014, Marisol Ortiz was working at Razz Yogurt on Main Street in Woodland when a man came into the store wearing a hat and sunglasses, with a piece of paper covering his mouth. He came up to the counter, told Ortiz to give him the money, and said he had a gun. His left hand was in his pocket, and there was something bulky inside. She removed about $300 from the cash register, and the man took it and fled on a bike. A couple of weeks later, Ortiz picked out defendant as the robber from a photographic lineup. Ortiz also identified defendant as the robber during trial.

B

*Robbery At Sally Beauty Supply*

*Count 6 Robbing Teresa Michel—Guilty & Count 5 Robbing Lisa Lucero—Guilty*

On July 10, 2014, Teresa Michel and Lisa Lucero were working together at Sally Beauty Supply on Main Street in Woodland when a man came into the store wearing a baseball cap and sunglasses, with a paper towel covering his mouth. He had a zippered pouch under his arm. He came up to the counter and said, "I'm going to make this short but sweet ... give me the money." He told them he had a gun and pulled out the gun half way from the zippered pouch. Michel and Lucero quickly took out a little less than $200 and handed it to the man. Michel and Lucero both separately identified the robber as defendant from a photographic lineup and then at trial.

C

*Robbery Of Dorothy Olsen At College Drive–In Cleaners*

*Count 4—Not Guilty*

On July 14, 2014, 86–year–old Dorothy Olsen was working at College Drive–In Cleaners on College Street in Woodland when a man came into the store wearing a baseball cap and sunglasses and a tan-colored bag near his face. Olsen asked if she could help him, and he calmly said, "I want your money." Olsen responded, "why would you want to do such a thing as that?" "[Y]ou'll end up being picked up and be put in jail, and that is not a nice life to have ... we don't have much money in this store, but you can go to the grocery store, they have lots of money." The man responded, "I could take you down," to which Olsen asked, "Why would you want to do a stupid thing like that?" But, Olsen "decided [she] better give him the money" and gave him about $170 to $200 from the cash drawer. Olsen was unable to identify the robber as defendant from a photographic lineup, but she identified the robber as defendant at trial.

## D

*Robbery of Marissa Torix At Papa Murphy's*

*Count 3—Guilty*

On July 16, 2014, Marissa Torix was working at Papa Murphy's on Main Street in Woodland when a man came into the store wearing a baseball cap, sunglasses, and a medical mask and told her to empty the register or he would pull out a gun. She emptied the register and gave the man about $155, and the man fled on a bike. Torix picked out defendant as the robber from a photographic lineup. Torix also identified defendant as the robber during trial.

## E

*Attempted Robbery of Faviola Ochoa At Jack In The Box*

*Count 2—Guilty*

On July 18, 2014, Faviola Ochoa was working at Jack in the Box on East Main Street in Woodland when a man came into the restaurant wearing a cap, dark glasses, a cup lid covering his mouth, and holding a pouch in his hand. The man said she needed to open the cash register and if she didn't, he was going to pull a gun on her. Ochoa responded that she needed to take some tacos out of the oven or they would burn, told him to stay, and then she went back to see her manager. He stayed for about three minutes and then left the restaurant. Ochoa was unable to pick out defendant as the robber from a photographic lineup or during trial. But police were able to get a still picture of the robber from the store security video camera.

## F

*Robbery Of Dania Amador At Jimboy's Tacos*

*Count 1—Jury Unable To Reach A Verdict*

On July 19, 2014, Dania Amador was working at Jimboy's Tacos on Court Street in Woodland when a man came into the restaurant wearing a hat, glasses, and a napkin up to his face. The man told her, "don't make a scene, just give me all the money." She thought he had a gun because he put his hand on his waistband. She gave him about $200. Amador picked out defendant as the robber from a photographic lineup when police showed her the lineup, but at trial, she could not remember whom she had picked out.

## G

*Identification Of Defendant As The Robber By His Brother And Stepfather*

Police put together a press release about the robberies containing the still photograph of the robber.

> On July 21 or 22, 2014, defendant's brother saw the press release, recognized defendant in the photograph, and called police. Earlier, on July 16, 2014, the brother had seen defendant near Papa Murphy's in Woodland sitting on his bicycle wearing a surgical mask.
>
> Also on July 21 or 22, 2014, defendant's stepfather saw the same press release and called police to say he recognized the photograph as being defendant.
>
> The brother and stepfather called police separately, without knowledge of the other one doing so.
>
> H
>
> *Defendant's Arrest And Interview With Police*
>
> On July 22, 2014, Woodland Police Officer Pablo Gonzales arrested defendant on West Court Street in Woodland. Defendant was carrying the black satchel that was used by the perpetrator of the Sally Beauty Supply robbery and Jack in the Box attempted robbery. Inside the satchel was a hat and sunglasses and a methamphetamine pipe with drug residue. Defendant had in his jacket a black toy gun that looked like a real semiautomatic handgun.
>
> Woodland Police Detective Greg Ford interviewed defendant at the police station. Defendant denied he was the robber. He admitted using methamphetamine daily. He had been living at his parents' house, then was evicted from an apartment he had moved into, and now had been transient for two months.

People v. Jimenez, No. C077694, 2015 WL 6470806, *1-2 (Cal. Ct. App. Sept. 23, 2015).

*Issues Presented*

As introduced above, petitioner sets forth the following issues:

1. There Is Insufficient Evidence to Support Convictions Because Petitioner's Identity Was Not Proven[1];

2. Trial Court Committed Prejudicial Error [in admitting] Evidence of Petitioner's Transient Status & Drug Use;

3. Trial Court Erred When It Denied the Motion for Mistrial Because of the Highly Prejudicial Remarks of [a] Testifying Witness;

4. The Giving of CALCRIM No. 315 Violates Due Process.

---

[1] The undersigned has dropped petitioner's word "substantial" as that term has no independent meaning outside the usual standards for insufficient evidence.

4

*AEDPA Standards*

All merits issues in Section 2254 cases for which the state courts have ruled are viewed through the prism of AEDPA. The well recognized standards are set forth below:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) states:

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 587 U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's

5

decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'" "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, supra, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, supra, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on a petitioner's

6

claims rejects some claims but does not expressly address a federal claim, a "federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013).  When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, supra, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

The state court need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, supra, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98.  A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. at 101 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).  Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]"

the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, supra, 538 U.S. at 75).

With these principles in mind the court turns to the merits of the petition.

*Discussion*

    A. Insufficient Evidence

Petitioner takes a different view of the evidence against him from that of the California Court of Appeal and the actual record in this case. The standards relating to review of the sufficiency of the evidence in an AEDPA context require denial of this claim. The Court of Appeal found:

> *There Was Sufficient Evidence To Establish Defendant As The Perpetrator Of The Robberies*
>
> Defendant claims there was insufficient evidence to establish he was perpetrator of the robberies for the following two reasons: (1) "[n]o physical or forensic evidence connected [him] to the crime[s]"; and (2) "[t]he various eyewitness identifications of [him] … were inherently improbable, unbelievable per se." Not so.
>
> Contrary to defendant's first point, there was physical evidence connecting him to the robberies. When Officer Gonzales arrested defendant, defendant was carrying the black satchel that was used by the perpetrator of the Sally Beauty Supply robbery and Jack in the Box attempted robbery. Inside the satchel were a hat and sunglasses that were consistent with the modus operandi used in the robberies. Defendant also had in his jacket a black toy gun that looked like a real semiautomatic handgun. That was consistent with Lucero's testimony that she saw defendant pull out something that resembled a gun during the Sally Beauty Supply robbery.
>
> And contrary to defendant's second point, there was nothing "inherently improbable" or "unbelievable per se" about the witness identifications. Four of the robbery victims (Ortiz, Michel, Lucero, and Torix) identified defendant as the perpetrator both from the photographic lineup before trial and then during trial as the perpetrator, and separately defendant's brother and stepfather reported to police that they recognized defendant as the person in the press release photo concerning the robberies.

People v. Jimenez, 2015 WL 6470806, at *2-3.

////

////

8

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). Sufficient evidence supports a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). "After AEDPA, we apply the standards of Jackson with an additional layer of deference." Juan H. v. Allen, 408 F.3d at 1274. See also the AEDPA standards set forth above. Moreover, petitioner's challenge to the sufficiency of evidence based on credibility of the witnesses is not cognizable in an insufficient evidence claim. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994); see also Schlup v. Delo, 513 U.S. 298, 330 (1995) (recognizing that the credibility of witnesses is generally beyond the scope of sufficiency of the evidence review).

Therefore, when a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson, supra, at 319. In Jackson the Supreme Court articulated a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).

> First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. Jackson, U.S. at 319, 99 S.Ct. 2781. […] [W]hen "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume—even if it does not affirmatively appear in the record— that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326, 99 S.Ct. 2781; see also McDaniel [v. Brown, 130 S.Ct. at 673–74.
>
> Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781.

////

> "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt."

Id. at 1164–65.

And, where the trier of fact could draw conflicting inferences from the facts presented, one favoring guilt and the other not, the reviewing court will assign the one which favors conviction. McMillan v. Gomez, 19 F.3d at 469.

The undersigned has reviewed the entire transcript in this case, and the California Court of Appeal was certainly rational in confirming the sufficiency of the evidence. For example, witness Ortiz, a worker at Razz Yogurt, identified petitioner in court in very certain terms (ECF No. 30-3 at 99), and had identified him prior to trial in a photo lineup (ECF No. 30-3 at 104). When asked how she could have identified him because he had his face covered with a piece of paper, she said: "Because when I gave him the money, I put it down where the scale was, and he had to grab both hands (sic) to grab the money." Id. at 100; see also, Id. at 102.[2]

The victim of the Sally Beauty supply robbery also gave strong testimony that she saw enough of petitioner's face; she identified petitioner in court (ECF No. 30-3 at 121), and also in a previous photo lineup (ECF No. 30-3 at 129-130). This witness also identified the pouch petitioner was carrying on the day of the robbery; this was the pouch introduced into evidence, and the one with petitioner when he was arrested. Id. at 123.

A last example would be the Papa Murphy's robbery. The victim there identified petitioner in court (ECF No. 30-3 at 187); she had previously picked him out of a photo line-up. She had previously testified that the robber was wearing a surgical mask (ECF No. 30-3 at 185)— the same surgical mask which petitioner's [step]brother had seen on petitioner near Papa Murphy's (ECF No. 30-3 at 274-275).

These examples should be compared to the College Drive-In Cleaners robbery for which petitioner was acquitted. There, the victim who was 87 years old, and with seemingly poor

////

---

[2] Unless the undersigned indicates otherwise, all RT citations shall be to ECF No.30-3.

10

eyesight, was very equivocal in her identification in-court (ECF No. 30-3 at 162) and she could not identify him in the previous photo lineup (ECF No. 30-3 at 163). Further, as the California Court of Appeal emphasized, both petitioner's step-father and step-brother independently identified petitioner to the police as the robber after the police had broadcast the robber's picture taken from a store surveillance camera in hopes of identifying him. ECF No. 30-3 at 273-274, 279-280. Finally, the "equipment" petitioner had about him when arrested was very similar to that which had been testified to by all victims as utilized by the robber. ECF No. 30-3 at 251-255.

In the traverse, petitioner takes issue with his identification by those victims who identified him basically alleging that because some of the victims could not specifically define his facial features to the police, they were somehow prohibited from identifying him at all. No authority is cited for this proposition, and the undersigned is not aware of any. Many people could identify a person as one they recognize, but would be hard pressed to paint a specific, verbal picture of the person. The jury heard the identifications, the cross-examination, and the jury made its determination. Moreover, petitioner forgets that his relatives, surely persons who could identify him, *volunteered* their identifications to the police after an admittedly grainy picture had been publicized. This type of testimony is difficult to refute and petitioner has not done so. Finally, in the traverse, petitioner picks at the objective evidence, and offers testimonial comment upon it, as if this court is permitted to be a 13th juror. The actual evidence was presented to the jury through witness identification. The almost unrecognizable black and white pictures presented in the traverse do not detract from the entirety of the evidence. Moreover, the undersigned will not accept petitioner's latter day "testimony" as he had an opportunity to present his testimony at trial and he waived that opportunity.

No reasonable jurist could claim that the California Court of Appeal was AEDPA unreasonable in assessing that there existed sufficient evidence for the counts on which petitioner was convicted.

////

////

B. <u>Improper and Potentially Prejudicial Evidence of Transient Status and Drug Usage</u>

For no purpose found to be appropriate, the prosecutor convinced the trial court to admit evidence of petitioner's transient status at the time of his arrest as well as his unlawful drug problems. The California Court of Appeal found error, but that the admission was harmless under any standard. However, the Supreme Court has not found that the admission of improper, prejudicial character type evidence to be a violation of the due process clause. Until it does, such an issue is not cognizable in federal habeas corpus. <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009). <u>See</u> <u>also</u> <u>Dixon v. Rackley</u>, No. 1:14-cv-01149 AWI MJS (HC), 2017 WL 1380547, at *58 (E.D. Cal. Apr. 17, 2017) (and cases cited therein).

There is thus no reason to examine the prejudice analysis of the California Court of Appeal. However, suffice it to say here that such an analysis, set forth in its opinion at <u>People v. Jimenez</u>, 2015 WL 6470806, *4) (given the AEDPA prism of <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993)), would not be found unreasonable.

C. <u>Witness Misconduct</u>

The witness in the College Drive-In Cleaners robbery, Dorothy Olson, 87 years old at the time of trial, blurted out a statement as she left the witness stand:

> The Court: Thank you, Ms. Olsen
>
> The Witness: Can I make one comment?
>
> The Court: Nope. You----
>
> The Witness: Well—
>
> The Court: You had your chance.
>
> The Witness: -- I feel sad for the person but the trouble is—
>
> Ms. Zuvala: Your Honor, I would object.
>
> The Witness: We don't want him out on the road to do this again.

ECF No. 30-3 at 170.

////

////

////

Defense counsel asked that the comment be stricken, and the trial judge did so:

> The Court: Members of the jury, that extra comment that you just heard, please put that out of your mind. You are not to consider it in any way.

Id.

Court was then recessed, but at the start of the next day, defense counsel asked for a mistrial. ECF No. 30-3 at 172-173. The trial judge believed the admonition to be enough, and denied the motion. Id. at 174.

Petitioner believes due process was violated because the mistrial was denied. Respondent treats the issue here as one of prejudicial testimony, much like the preceding section. However, the underlying issue involving the denial of the mistrial—trial spectator misconduct—is the one to be analyzed here. Such is the case because Ms. Olsen was no longer a witness; she had been excused, and was not under oath when the comment was made. She was not testifying, nor was her comment "evidence." Thus, her gratuitous opinion comment would be no different from that offered by a spectator in the courtroom, a role which had just been placed upon Ms. Olsen. The issue here would be no different had Ms. Olsen assumed a seat in the courtroom after her testimony, waited a short while, after which she then blurted out the comment.

The Supreme Court has not held that spectator misconduct, *not sponsored or encouraged by the government*, has ever risen to the level of a due process violation. See Carey v. Musladin, 549 U.S. 70, 77 (2006) (spectator buttons designed to arouse sympathy for the victim); Turner v. McEwen, 819 F.3d 1171, 1176-1177 (9th Cir. 2016) (spectator attempting to direct a witness' testimony). Thus, because there is no inkling that Ms. Olsen was encouraged to give her post-testimony comment by the government, petitioner's claim founders upon the lack of such Supreme Court precedent.

Again, because there is no federal claim in the first place, the undersigned need not parse the prejudice analysis of the California Court of Appeal which looked upon the issue as one possibly being governed by the general due process pronouncements regarding evidence citing Estelle v. McGuire, 502 U.S. 62, 70 (1991). Suffice it to say, nevertheless, that its observation

////

that the comment could not have been prejudicial because petitioner was *acquitted* of the robbery event involving the speaker, is unassailable.

D. Jury Instruction

The opinion of the California Court of Appeal places this issue in perspective:

> *There Was No Error In The Court's Standard Instruction Regarding Eyewitness Identification, CALCRIM No. 315*
>
> Defendant contends the court's instruction regarding eyewitness identification (CALCRIM No. 315) that told the jury to consider, among other things, "How certain was the witness when he or she made an identification?" deprived him of due process of law based on recent scientific research regarding the unreliability of eyewitness identification.1 We reject defendant's argument based on California Supreme Court precedent.
>
> In *People v. Johnson* (1992) 3 Cal.4th 1183, 1231–1232, the California Supreme Court approved the standard eyewitness identification instruction, which included a consideration of the witness's certainty of the identification. The court found no error in the instruction despite the fact that an expert defense witness had testified that a witness's confidence in an identification is not positively correlated with the accuracy of the identification. (*Id*. at p. 1231.) Four years later, in *People v. Arias* (1996) 13 Cal.4th 92, 168, the Supreme Court stated that the level of certainty displayed by the witness is among the factors to be considered in evaluating whether the eyewitness testimony should be suppressed. Finally, nine years after *Arias*, in *People v. Ward* (2005) 36 Cal.4th 186, 213, the Supreme Court held that the trial court had no sua sponte duty to modify the eyewitness identification instruction to indicate that the witness's certainty does not necessarily make the identification accurate.
>
> We believe that this precedent from the California Supreme Court shows its approval of the standard instruction given here. Thus, we find no error, constitutional or otherwise, in this jury instruction.

People v. Jimenez, 2015 WL 6470806, at *5-6 (footnote omitted).

Again, it is not the province of this federal court to second guess state authority unless the Supreme Court has spoken to the contrary. Petitioner has not cited to any such authority, nor is the undersigned aware of any Supreme Court authority which prohibits the factor of a witness' "certainty" in assessing eyewitness identifications. Respondent correctly cites Supreme Court authority to the contrary in the context of suggestive pre-trial identification procedures:

> To determine whether an identification procedure violates a defendant's due process rights, a court must consider "whether under the 'totality of the circumstances' the identification was

14

> reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The "factors to be considered ... include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, *the level of certainty demonstrated by the witness at the confrontation*, and the length of time between the crime and the confrontation." *Id.* at 199–200, 93 S.Ct. 375; see also *United States v. Jones*, 84 F.3d 1206, 1209–10 (9th Cir.1996).

United States v. Drake, 543 F.3d 1080, 1088 (9th Cir. 2008) (emphasis added).

See also Daniels v. Davey, No. 1:15-cv-01211-DAD-JDP, 2019 WL 118407, at *6 (E.D. Cal. Jan. 7, 2019); Amezquita v. Macomber, No. CV 15-17277-VBF (KS), 2017 WL 1364608 (C.D. Cal. Jan. 12, 2017). Accordingly, this claim should be denied.

*Conclusion*

Petitioner has not set forth a meritorious claim which warrants the grant of his habeas petition. IT IS HEREBY RECOMMENDED that the petition be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 6, 2019

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE